UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN RAUL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALCOBRA, LTD., YARON DANIELY and TOMER BERKOVITZ,<br><br>Defendants, | Civil Action No. 1:17-cv-1233<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Raul ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters from the investigation conducted by and through Plaintiff's attorneys. The investigation includes, without limitation, a review of the following: defendants' public documents; conference calls and announcements made by defendants; United States Securities and Exchange Commission ("SEC") filings; wire and press releases published by and regarding Alcobra, Ltd. ("Alcobra" or the "Company"); analysts' reports and advisories about the Company; and information readily obtainable from public sources. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Alcobra securities between August 13, 2015 and January 17, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Alcobra is a biopharmaceutical company that focuses on the development and commercialization of oral drug candidates. The Company's primary drug candidate in development is metadoxine extended release ("MDX"), an onset/extended release formulation of the chemical pyridoxine pyroglutamate, which is in its second Phase III clinical trial for adults with attention deficit hyperactivity disorder ("ADHD").

3. ADHD is a brain disorder characterized by hyperactivity, chronic inattentiveness and impulsive behavior. ADHD starts in childhood and often persists throughout adulthood. The disorder makes normal social behavior and performing basic tasks extremely difficult.

4. In October 2014, the Company completed its first Phase III study of MDX over six weeks at eighteen sites in the United States and two sites in Israel at a dose of 1400mg once daily compared with a placebo in 300 adults with ADHD as measured by the Conners' Adult ADHD Rating Scales ("CAARS") questionnaire (the "October 2014 Phase III Study").

5. The results of the October 2014 Phase III Study did not indicate any statistically significant indication of the efficacy of MDX in the treatment of ADHD.

6. Though the October 2014 Phase III Study results showed no statistically significant trend in favor of MDX over a placebo, the Company insisted that the results of the October 2014

Phase III Study were skewed due to instances in which subjects taking a placebo experienced spontaneous improvement in their symptomology ("extreme placebo responses").

7. Although the October 2014 Phase III Study for MDX did not show a statistical significant benefit over a placebo (even removing the placebo patients experiencing spontaneous improvement from the statistical analysis), in the second quarter of 2015, the Company initiated a second Phase III clinical trial in the United States for the use of MDX to treat ADHD in adults. The Company called this second Phase III study the "MDX Evaluation in Adults – Study of Response and Efficacy," or the "MEASURE" study.

8. Throughout the Class Period, defendants caused the Company to issue materially false and misleading statements and/or omit material information regarding the Company's business, operational and compliance policies in connection with the MEASURE study. Specifically, the Company's statements made throughout the Class Period were false and misleading and/or omitted material information because: (1) the statements discounted the results of the October 2014 Phase III Study (showing that there was no statistically significant benefit from MDX); (2) the statements assumed that if extreme placebo response patients were removed from the analysis, a statistically significant trend in favor of MDX results; it did not; (3) the statements were based upon disregarding ADHD patients spontaneous improving with a placebo, while falsely attributing all improvement in subjects taking MDX to the medication and none to spontaneous improvement (though there is no basis to assume that spontaneous improvement in ADHD symptoms occurs only for placebo patients). As a result of the foregoing, defendants' statements about Alcobra's business, operations, and prospects, including statements about the clinical prospects of MDX in the MEASURE study, were false and misleading and/or lacked a reasonable basis.

9. Though there was no alteration in the composition of MDX, and no basis upon which to believe that the second Phase III study – the MEASURE study – would produce a statistically significant trend in favor of MDX over a placebo, the Company launched the MEASURE study without informing investors that there was no basis to expect any different result than the October 2014 Phase III Study.

10. On January 17, 2017, the Company issued a press release and revealed that the MEASURE study failed to meet its primary endpoint, just as in the October 2014 Phase III Study. The January 17, 2017 press release stated, in pertinent part:

> **Alcobra Reports Phase 3 Clinical Trial of MDX in Adults with ADHD Missed Primary Endpoint**
>
> TEL AVIV, Israel, Jan. 17, 2017 (GLOBE NEWSWIRE) -- Alcobra Ltd. (Nasdaq:ADHD), an emerging pharmaceutical company focused on the development of new medications to treat patients with cognitive disorders, including Attention Deficit Hyperactivity Disorder (ADHD) and Fragile X Syndrome, today reported the top-line results from MEASURE, its second Phase 3 clinical trial for the investigational product Metadoxine Extended Release (MDX) for the treatment of ADHD in adult patients. In this trial, ***MDX did not meet the primary endpoint of demonstrating a statistically significant difference from placebo in the change from baseline of the investigator rating of the Conners' Adult ADHD Rating Scales (CAARS).***
>
> As previously communicated, the top-line data analysis was conducted on the Full Analysis Set (n=283), which includes all randomized subjects with at least one post-baseline efficacy assessment. Consistent with previously conducted studies, MDX was generally well tolerated.

(Emphasis added).

11. On this news, the Company's share price plummeted to close at $0.94 on January 17, 2017, down from $1.90 on January 13, 2017 (the previous trading day), a loss of $0.96, or approximately 51%, on usually heavy volume of 6,155,800 shares.

12. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and the other Class members have

suffered significant losses and damages.

## JURISDICTION AND VENUE

13. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

14. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

15. Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the defendants' actions, and the subsequent damages, took place within this District. Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District. Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this District.

16. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange. Additionally, defendants named herein, individually and collectively, have sufficient minimum contacts with this District, so as to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

17. Defendants elected to list Alcobra's stock on the NASDAQ Global Market stock exchange, as opposed to the Tel Aviv Stock Exchange. Further, during the Class Period, Alcobra conducted a secondary offering of 6,175,000 ordinary shares that are traded on the NASDAQ Global Market stock exchange.

18.     Additionally, defendants relied almost exclusively on U.S.-based testing sites in connection with the Phase III study of MDX, including eighteen (18) out of twenty (20) which were located within the U.S. and only two were located in Israel. One of these testing sites was located at the Medical Research Network, located within this District.

## THE PARTIES

19.     Plaintiff, as set forth in the accompanying certification, incorporated herein by reference, purchased Alcobra common stock at an artificially inflated price during the Class Period, and was harmed when the true facts were revealed and the artificial inflation was removed from the price of the stock at the end of the Class Period.

20.     Defendant Alcobra is an Israeli corporation with its principal executive offices located at Azrieli Triangle Building, 132 Derech Menachem Begin, 39th Floor, Tel Aviv 6701101, Israel.

21.     Defendant Yaron Daniely ("Daniely") has been the Company's President and Chief Executive Officer ("CEO") and a director of the Board since March 2010. Defendant Daniely signed and/or authorized the signing of the false and misleading financial statements described herein.

22.     Defendant Tomer Berkovitz ("Berkovitz") has been the Chief Financial Officer ("CFO") of the Company since May 2014 and the Chief Operating Officer ("COO") since January 2016. Defendant Berkovitz signed and/or authorized the signing of the false and misleading financial statements described herein.

23.     Defendants Daniely and Berkovitz are collectively referred to herein as the "Individual Defendants."

24.     The Individual Defendants and defendant Alcobra are collectively referred to